COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-09-001-CV

 

 

IN THE
INTEREST OF V.R., A CHILD

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction

Appellants S.P. and M.R. appeal the trial court=s order
terminating their parental rights to their child V.R.[2]  They each argue in three issues that the
evidence is legally and factually insufficient to support the trial court=s
statutory termination findings and its best interest finding.  We affirm.








                                        Background
Facts

In 2005, S.P. gave birth to V.R.=s older
half-brother D.R.  The Texas Department
of Family and Protective Services (Department) removed D.R. from S.P.=s care
because of her cocaine and alcohol abuse during pregnancy.  S.P.=s
parental rights to D.R. were terminated in August 2007 when she failed to
complete any of her service plan; D.R. has since been adopted by his foster
family.[3]  S.P. was pregnant with V.R. when her rights
to D.R. were terminated.

S.P. gave birth to V.R. on October 21, 2007.  The Department removed V.R. from S.P. at the
hospital after a nurse informed the Department that S.P. had tested positive
for opiates.  The nurse told the
Department that S.P.=s positive test could have been
the result of pain medication the hospital had given her;[4]
nevertheless, the Department was concerned because of S.P.=s taking
drugs while pregnant with D.R.[5]  In addition, the Department was not able to
quickly find a suitable family placement.








S.P. testified that she had obtained a prescription
for Vicodin for false labor contractions in September 2007, a month before V.R.=s birth,
but that she never filled the prescription. 
She had received another prescription for Vicodin a few weeks earlier
for pain between her leg and pelvis; she testified that she did not get that
prescription filled either.  She was also
hospitalized in March, May, and June 2007, but she denied that she was taking
drugs at the time of those visits.

In April 2008, after V.R. had been removed and
while S.P. was supposed to be working her service plan, S.P. tested positive
for codeine.  At trial, she explained
that the drug test was positive because she had gone to the hospital for a
sprained ankle and was given a Vicodin pill. 
According to S.P., the doctor tried to give her a prescription at that
time but she refused to take it. 








The Department did not produce any evidence that
S.P. had actually filled her Vicodin prescriptions, but it did elicit testimony
from S.P. that she had lied about her past drug problems during her hospital
visits, which implied to the Department that S.P. may have obtained the Vicodin
under false and nefarious pretenses.[6]  S.P.=s
caseworker testified that she believed S.P. was abusing prescription drugs.

At the time of trial, S.P. was in this country
illegally and did not have a green card or a driver=s
license (although she testified that this did not prevent her from driving);
however, she had applied for a green card, had lived here for twenty-three
years, went to public school, and could speak fluent English.  She has a history of abusing drugs, having
admitted to cocaine use in 2005 and during her pregnancy with D.R.  S.P. overdosed on cocaine in 2005 and was
hospitalized, but she testified that she last used cocaine in that year[7]
and that she had not used any drugs while this case was pending other than the
prescribed Vicodin.  She was unemployed.








M.R., V.R.=s
father,[8]
also has a history of abusing cocaine, which he admitted using when V.R. was
born.  However, he said that he only used
drugs on a once-per-week basis for a three-month period ending in January
2008.  Although he tested positive for
cocaine in April 2008, after V.R.=s
removal, he contended that it resulted from his January 2008 drug use.[9]  A licensed drug counselor for Tarrant County
MHMR testified, however, that when M.R. attended group counseling in July 2008,
he told the group that he was there because he had Arelapsed.@  M.R. further testified that he had taken
every drug test the Department had asked him to take, that all drug tests had
been negative since April 2008, and that S.P. did not know about his drug use.[10]  M.R. knew about S.P.=s drug
use, however, including the circumstances of D.R.=s
removal and termination.








M.R. was also in this country illegally and did
not have a green card or a driver=s
license.[11]  He admitted that he could be deported at any
time.  He testified that he worked sixty
to seventy hours a week helping his cousin install marble bathroom floors; he
was paid in cash and did not pay taxes. 

The Department filed its original petition on
October 24, 2007, three days after V.R.=s
birth.  The Department placed V.R. in the
same licensed foster home as D.R.  She
has lived there all of her life, and her foster parents are interested in
adopting her.  She was one year old at
the time of the termination trial, at which time S.P. was pregnant again.

The Department filed its service plan in December
2007.  At that time, the Department=s goal
was to reunify V.R. with her parents.  The
service plan required the parents to maintain employment, maintain stable
housing, obtain green cards, complete various classes and assessments, and take
random drug tests.








M.R. and S.P. affirmed that the Department
explained the service plan to them, that they understood the service plan=s
requirements, that they understood the importance of following the service plan
to their continued relationship with V.R., and that all of the services in the
plan were available to them without any cost. 
A Department caseworker testified that she reviewed the service plan
with M.R. and S.P. on seven dates over the course of the trial court=s
proceedings and that she discussed the Aneed for
them to complete the services so they would have the opportunity to show the
Court they would provide a safe and secure environment@ for
V.R. 

In April 2008, the Department filed a service
plan review.  The review indicated, among
other facts, that (1) V.R.=s foster
mother provided a Achild proofed@ home
and Aeducationally
appropriate toys and activities@ for
V.R., (2) S.P. and M.R. had completed parenting classes and had tested negative
for drugs from November 2007 to February 2008, and (3) S.P. and M.R. were
appropriate and loving during their visits with V.R., and they also had a home
that was Aclean, appropriate, and child
proofed.@  The review stated, however, that S.P. and
M.R. needed to change their behavior by demonstrating an ability to support
themselves and V.R. and by demonstrating a crime-free and drug-free lifestyle.








The Department=s goal
to reunify V.R. with her parents remained until August 2008, when its goal
became termination and adoption because the parents had apparently become
disinterested in completing their service plan, had tested positive for drugs
(opiates for S.P. and cocaine for M.R.) in April of that year but had denied
having drug problems, and had remained Aillegal
immigrants with the risk of being deported.@  Additionally, although S.P. and M.R. had been
telling their caseworker that they had been attending Narcotics Anonymous (NA)
meetings regularly,[12]
the caseworker testified that they did not provide verification when
pressed.  M.R. and S.P. testified that
they did show the caseworker a sign-in sheet once but that she just looked at
it and gave it back to them.








At the time of trial in October 2008, S.P. and
M.R. had been dating for over two years and had lived in the same apartment for
over a year.  Although they were not
married, S.P. testified that they planned to marry sometime in the future.  They had completed the parenting classes and
psychological evaluations that the Department required in their service
plan.  But although they both had
attended at least some classes related to their drug use (Community Addiction
Treatment Services (CATS)[13]
and ROADS), they failed to complete the recommended course of classes.[14]  Further, neither completed the additional
psychological counseling recommended.

S.P. attended some but not all scheduled visits
with V.R.  She was also fifteen to twenty
minutes late to at least some of the hour-long visits.[15]  M.R. did not attend many visits because of
his work schedule. 








After multiple permanency hearings and a bench
trial, the trial court terminated both S.P.=s and
M.R.=s
parental rights to V.R.  The court cited
its reasons for termination as those contained in
subsections 161.001(1)(D), (E), and (M) of the family code as to S.P. and
those in subsections 161.001(1)(D) and (E) as to M.R.[16]  See Tex. Fam. Code Ann. '
161.001(1)(D), (E), (M).  The court also
found that termination of both parents= rights
was in V.R.=s best interest.  See id. '
161.001(2).  The trial court denied the
parents= motions
for new trial, and the parents filed their notices of this appeal. 

                                      Standards
of Review

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child.  Tex. Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).








Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ 
Id. ' 101.007 (Vernon
2002).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

Legal sufficiency

In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005); see In re Z.C., 280
S.W.3d 470, 474 (Tex. App.CFort
Worth 2009, pet. denied).  We must review
all the evidence in the light most favorable to the finding and judgment.  J.P.B., 180 S.W.3d at 573; see Z.C.,
280 S.W.3d at 474.  This means that we
must assume that the factfinder resolved any disputed facts in favor of its
finding if a reasonable factfinder could have done so.  J.P.B., 180 S.W.3d at 573; see Z.C.,
280 S.W.3d at 474.  We must also
disregard all evidence that a reasonable factfinder could have
disbelieved.  J.P.B., 180 S.W.3d
at 573; see Z.C., 280 S.W.3d at 474.








We must consider, however, undisputed evidence
even if it is contrary to the finding.  J.P.B.,
180 S.W.3d at 573; see Z.C., 280 S.W.3d at 474.  That is, we must consider evidence favorable
to termination if a reasonable factfinder could and disregard contrary evidence
unless a reasonable factfinder could not. 
J.P.B., 180 S.W.3d at 573; see Z.C., 280 S.W.3d at 474.

We must therefore consider all of the evidence,
not just that which favors the verdict.  J.P.B.,
180 S.W.3d at 573.  But we cannot weigh
witness credibility issues that depend on the appearance and demeanor of the
witnesses, for that is the factfinder=s
province.  Id. at 573B74.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.

Factual sufficiency








In reviewing the evidence for factual sufficiency,
we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provisions of section
161.001(1) and that the termination of the parent-child relationship would be
in the best interest of the child.  In
re C.H., 89 S.W.3d 17, 28 (Tex. 2002). 
If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M., 209 S.W.3d
at 108.

                  Findings Under Subsections
161.001(1)(D) and (E)

In their first two issues, S.P.
and M.R. contend that the evidence is legally and factually insufficient to support
the trial court=s findings under subsections
161.001(1)(D) and (E).

S.P.=s Appeal








Along with a best interest finding, a finding of
only one ground alleged under family code section 161.001(1) is sufficient to
support a judgment of termination.  In
re E.M.N., 221 S.W.3d 815, 821 (Tex. App.CFort
Worth 2007, no pet.).  Although S.P.
appeals the court=s findings under subsection (D)
and (E), she failed to challenge its finding under subsection (M):  that her parental rights to another child had
been terminated under subsection (D) or (E).[17]  In fact, she confirmed at trial that her
rights to D.R. had previously been terminated because she abused drugs during
and after her pregnancy with him.  Based
on this finding alone, the trial court had a sufficient basis to terminate S.P.=s rights
under section 161.001(1).  See
Fletcher v. Dep=t of Family & Protective
Servs., 277 S.W.3d 58, 64 (Tex. App.CHouston
[1st Dist.] 2009, no pet.); In re B.K.D., 131 S.W.3d 10, 16 (Tex. App.CFort
Worth 2003, pet. denied) (explaining that Ato be
successful on appeal, the appellant must establish that the . . . findings on
all of the [Department=s] pleaded grounds are
unsupported by the evidence@); Green
v. Tex. Dep=t of Protective & Regulatory
Servs., 25 S.W.3d 213, 219 (Tex. App.CEl Paso
2000, no pet.) (holding that because the appellant Afailed
to challenge the legal or factual sufficiency of the evidence with regard to
[one of the statutory provisions], the first element of involuntary termination
c[ould] be affirmed based on th[at] provision@).

Because S.P. failed to challenge at least one
ground for termination, we normally would not address the sufficiency of the
evidence supporting the trial court=s
findings as to the other two grounds. 
However, because the evidence relevant to those two grounds is also
relevant in evaluating the findings as to M.R., we will address them as well.








Endanger means to expose to loss or injury or to
jeopardize.  Boyd, 727 S.W.2d at
533; In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.); see also In re M.C., 917 S.W.2d 268, 269 (Tex.
1996).  To prove endangerment under
subsection (D) of section 161.001(1), the Department had to prove that S.P. (1)
knowingly (2) placed or allowed V.R. to remain (3) in conditions or
surroundings that endangered her physical or emotional well‑being.  See Tex. Fam. Code Ann. '
161.001(1)(D); Z.C., 280 S.W.3d at 474. 
AUnder
subsection (D), it is necessary to examine evidence related to the environment
of the child to determine if the environment was the source of endangerment to
the child=s physical or emotional well‑being.@  In re M.C.T., 250 S.W.3d 161, 168
(Tex. App.CFort Worth 2008, no pet.).  But to support a finding of endangerment, Athe
parent=s
conduct does not necessarily have to be directed at the child nor is the child
required to suffer injury.@  Id. at 169.

Under subsection 161.001(1)(E), the relevant
inquiry is whether evidence exists that the endangerment of the child=s
physical well-being was the direct result of the parent=s
conduct, including acts, omissions, or failures to act.  J.T.G., 121 S.W.3d at 125.  Additionally, termination under subsection
161.001(1)(E) must be based on more than a single act or omission; a voluntary,
deliberate, and conscious course of conduct by the parent is required.  Tex. Fam. Code Ann. ' 161.001(1)(E);
J.T.G., 121 S.W.3d at 125.  The
specific danger to the child=s
well-being may be inferred from parental misconduct standing alone.  Boyd, 727 S.W.2d at 533; In re R.W.,
129 S.W.3d 732, 738 (Tex. App.CFort
Worth 2004, pet. denied).








As a general rule, conduct that subjects a child
to a life of uncertainty and instability endangers the physical and emotional
well-being of a child.  R.W., 129
S.W.3d at 739.  Drug use and its effect
on a parent=s life and his or her ability to
parent may establish an endangering course of conduct.  Id.; see Z.C., 280 S.W.3d at
474 (stating that a parent=s Adrug use
and drug‑related criminal activity may support a finding that the child=s
surroundings endanger his [or her] physical or emotional well‑being@).  Further, a parent=s mental
state may be considered in determining whether a child is endangered if that
mental state allows the parent to engage in conduct that jeopardizes the
physical or emotional well-being of the child. 
Id.  To determine whether
termination is necessary, courts may look to parental conduct both before and
after the child=s birth.  In re D.M., 58 S.W.3d 801, 812 (Tex.
App.CFort
Worth 2001, no pet.); see In re M.R.J.M., 280 S.W.3d 494, 502 (Tex. App.CFort
Worth 2009, no pet.) (op. on reh=g)
(explaining that the @factfinder may infer from past
conduct endangering the child=s well‑being
that similar conduct will recur if the child is returned to the parent@).  Because the evidence concerning the two
statutory endangerment grounds for termination is interrelated, we consolidate
our examination of it.  See M.C.T.,
250 S.W.3d at 169; In re S.D., 980 S.W.2d 758, 762 (Tex. App.CSan
Antonio 1998, pet. denied); In re B.R., 822 S.W.2d 103, 106 (Tex. App.CTyler
1991, writ denied) (recognizing the link between a parent=s
conduct and a child=s conditions and surroundings).













The trial court could have reasonably inferred
that S.P. sought out Vicodin prescriptions under false pretenses,[18]
took that drug while pregnant with V.R., and, as a result, tested positive for
that drug at V.R.=s birth and at times after her
birth; this evidence shows a continuing course of endangering conduct that is
likely to continue in the future, especially when considering S.P.=s
refusal to participate in the service plan=s drug
treatment programs and her refusal to admit that she has a drug problem.  See Z.C., 280 S.W.3d at 474.  Her poor choices in the past related to her
cocaine and alcohol use during her pregnancy with D.R. are also evidence of the
potential for future endangerment of V.R. 
See M.R.J.M., 280 S.W.3d at 502. 
Thus, S.P.=s drug history and her drug use
before and during these proceedings (regardless of the medical reasons for
which she claims she took the drugs) sufficiently supports the trial court=s
endangerment findings under the evidentiary review standards described
above.  See Vasquez v. Tex. Dep=t of
Protective & Regulatory Servs., 190 S.W.3d 189, 196 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied); In re U.P., 105 S.W.3d 222, 234 (Tex.
App.CHouston
[14th Dist.] 2003, pet. denied) (explaining that endangerment includes evidence
of drug addiction before and after a child=s
birth).

For all of these reasons, we overrule S.P.=s first
and second issues.

M.R.=s Appeal

In his first two issues, M.R. argues that the
evidence is legally and factually insufficient to support the trial court=s
endangerment findings as to his conduct.








M.R. has admitted to abusing cocaine; he tested
positive for cocaine as recently as six months before the termination trial.[19]  He failed to complete his substance abuse
classes, and he refused to admit to his therapist that he had a drug
problem.  Although he insisted that he
had not used drugs since January 2008 and that the results of the April 2008
hair follicle test were related to his January drug use, one of his drug
counselors testified that M.R. told his group in July 2008 that he had
relapsed.  M.R. knew that S.P. had abused
cocaine and that her rights to D.R. had been terminated for that reason.  In addition, the trial court could have
reasonably inferred that M.R. facilitated S.P.=s obtaining
Vicodin during her pregnancy with V.R. 
He was also in this country illegally and did not have a green card or a
driver=s
license.  He admitted at trial that he
could be deported at any time.

M.R.=s appeal
is admittedly a closer case than S.P.=s
appeal, as there is evidence that M.R. could possibly be an adequate parent if
a few circumstances changed.[20]  At trial, ad litem counsel for V.R. even
acknowledged that if M.R. was not still living with S.P., he would have a
better chance of avoiding termination. 
However, S.P. testified that she and M.R., rather than planning a
separation, were planning to be married. 
Although M.R. knew that S.P.=s rights
to D.R. had been terminated, he testified that S.P. would be responsible for
V.R.=s care
while he worked long hours.  These facts
indicate that V.R. would continue to be exposed to S.P.=s
continuing course of endangering conduct.

We have carefully reviewed the entire
record.  Giving due consideration and
deference to all of the evidence, we hold that the trial court could have
reasonably formed a firm belief or conviction that M.R. endangered V.R.  We therefore hold that the evidence is
legally and factually sufficient to support termination, and we overrule M.R.=s first
and second issues.








                                      Best
Interest of V.R.

In their third issues, M.R. and S.P. contend that
the evidence is insufficient to prove that termination of their rights is in
V.R.=s best
interest.

There is a strong presumption that keeping a
child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child=s best interest.  Tex. Fam. Code Ann. '
263.307(a) (Vernon 2002).

Among others, factors considered in evaluating
the parents= willingness and ability to
provide the child with a safe environment include the child=s age
and physical and mental vulnerabilities; whether there is a history of
substance abuse by the child=s family
or others who have access to the child=s home;
the willingness and ability of the child=s family
to seek out, accept, and complete counseling services and to cooperate with and
facilitate an appropriate agency=s close
supervision; the willingness and ability of the child=s family
to effect positive environmental and personal changes within a reasonable
period of time; and whether an adequate social support system consisting of an
extended family and friends is available to the child.  Id. ' 263.307(b);
R.R., 209 S.W.3d at 116; M.R.J.M., 280 S.W.3d at 506.








Other, nonexclusive factors that the trier of
fact in a termination case may use in determining the best interest of the
child include:

(A)    the
desires of the child;

 

(B)    the
emotional and physical needs of the child now and in the future;

 

(C)    the
emotional and physical danger to the child now and in the future;

 

(D)    the
parental abilities of the individuals seeking custody; 

 

(E)    the
programs available to assist these individuals to promote the best interest of
the child;

 

(F)     the
plans for the child by these individuals or by the agency seeking custody;

 

(G)    the
stability of the home or proposed placement;

 

(H)    the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and

 

(I)     any
excuse for the acts or omissions of the parent.

 

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976); M.R.J.M., 280 S.W.3d at 506B07.








Some listed factors may be inapplicable to some
cases; other factors not on the list may also be considered when
appropriate.  C.H., 89 S.W.3d at
27.  Furthermore, undisputed evidence of
just one factor may be sufficient in a particular case to support a finding
that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.

V.R. was only one year old at her termination
hearing and was thus at a vulnerable age; however, she was physically and
emotionally healthy and developmentally on target.  Her mother and father both had substance abuse
issues:  S.P. had a history of cocaine
abuse leading to the termination of her rights to another child, she had lied
about that abuse during her hospital stays, she had lied about her parental
history to Department personnel, she had used opiates several times during the
course of this case, and she had not completed or made a good-faith attempt to
complete the drug-related services available to her.  M.R. likewise was using cocaine around the
time of V.R.=s birth and tested positive for
cocaine during the pendency of this case.








There is no indication in the record that either
S.P. or M.R. has extended family or friends capable of providing support to
V.R.  S.P. had named an aunt as a
possible placement, but the Department was never able to determine if the home
was suitable because S.P.=s approximately eighty-year-old
grandmother, who also lived in the home and who would be responsible for some
of V.R.=s care,
was in Mexico, and the Department could not interview her.  M.R. had recommended his parents in Mexico,
and the trial court had signed an order allowing for a home study to be done,
but there was no evidence at trial regarding their home as a potential
placement for V.R.

V.R. was too young to have her desires
meaningfully considered.  S.P. had
demonstrated that she did not have adequate parenting abilities.  D.R. was born with drugs in his system, and
S.P. failed to get prenatal care while pregnant with him; she continued to use
drugs while pregnant with V.R., despite having had her rights to D.R.
terminated; and she took Vicodin again after V.R. had been removed.  According to the affidavit attached to the
Department=s petition, S.P. had twice been
placed in a mental hospital for unknown reasons.  She was not employed.  She did not have a green card or a driver=s
license even though the Department requested that she obtain those documents.  Although she had completed parenting classes,
she failed to complete the recommended counseling, including drug
counseling.  M.R. likewise completed
parenting classes but not counseling; furthermore, because of his work
schedule, primary parenting responsibility for V.R. would fall to S.P.[21]








Neither S.P. nor M.R. expressed any plans for
V.R., and neither had offered any excuses for their behavior.  Finally, S.P. acknowledged at trial that V.R.
was in a good environment with her foster family, and the evidence at trial
indicated that V.R. had little to no emotional bond with S.P. or M.R. but that
V.R. had a very strong bond with D.R. and the other children in V.R.=s foster
home.[22]

Again, giving due consideration and deference to
all of the evidence, we hold that the trial court could have reasonably formed
a firm belief or conviction that termination was in V.R.=s best
interest and thus that the evidence was legally and factually sufficient in
that regard.  We therefore overrule S.P.=s and
M.R.=s third
issues.

                                             Conclusion

Having
overruled all three of each of S.P.=s and M.R.=s issues, we affirm the trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:  July 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]To protect the privacy of
the parties involved in this appeal, we identify them by initials only.  See Tex. R. App. P. 9.8(b); Tex. Fam. Code
Ann. ' 109.002(d) (Vernon
2008).





[3]The termination order in
D.R.=s case reflects that
M.R., V.R.=s father, is not D.R.=s father.





[4]M.R. and S.P. testified
that S.P. had tested positive for opiates only because she had been given
Vicodin at the hospital for an earache (S.P.=s testimony) or a toothache (M.R.=s testimony) before her
labor was induced.  S.P. and M.R.
believed that it was okay for S.P. to take Vicodin because doctors at the
hospital gave it to her.





[5]V.R. never tested
positive for any drugs.





[6]S.P. agreed that if she
had been honest with nurses and doctors and told them that she had a drug
history, they may have prescribed other nonnarcotic substances to her during
her hospital stays. 





[7]According to the
testimony of Laurie Smith, a licensed chemical dependency counselor, S.P.
admitted taking cocaine in the past to treat a tooth infection.  S.P. admitted at trial that in summer 2006,
she had put cocaine Ain@ her tooth to treat an
infection.





[8]The Department alleged
that M.R. is V.R.=s alleged father.  M.R. admitted paternity in his request for
counsel and referred to V.R. as his daughter during trial; thus, termination
would not have been proper under section 161.002 of the family code.  See Tex. Fam. Code Ann. ' 161.002 (Vernon
2008) (relating to termination of rights of an alleged biological father); In
re K.W., 138 S.W.3d 420, 430 (Tex. App.CFort Worth 2004, pet. denied) (holding that
letters to the Department and to the court comprised an admission of paternity
under the termination statute).





[9]The test was a hair
follicle test rather than a urinalysis.





[10]S.P. testified that she
did not know about M.R.=s drug use but that he
knew about hers.





[11]M.R. does not speak
English; he participated at trial through an interpreter.





[12]M.R. testified that he
went to NA meetings from about February or March to July.  S.P. testified that she went from April
through May.





[13]S.P. went to CATS
evaluations because of referrals from the Department in December 2007 and May
2008.  CATS did not admit her to the
program in 2007 because she Adenied any illicit drug use at that time.@  But after her positive drug test in April
2008, she was again referred to CATS. 
After an evaluation in May 2008, CATS recommended that S.P. complete
twenty-eight two-hour group classes and four one-hour individual classesCthis is the standard
recommendation in Department referrals for significant narcotics abuse.  S.P. completed only five group classes and
one individual class, and she did not complete any classes after July 1, 2008, although
CATS provided free transportation to and from the classes.  M.R. testified that he also did not complete
the CATS classes.





[14]The record does not
indicate what the acronym ROADS stands for, but it does indicate that it is a
substance abuse education class aimed at recovery.  M.R. testified that the ROADS classes were
difficult to complete for him because he was Abattling with [his]
Spanish.@  When asked what part of the service plan she
successfully completed, S.P. testified, AMy psychological, my parenting.  That=s about it.@  She also
stated that even in those two classes, she participated in only fourteen hours
of services.





[15]A Department caseworker
testified that S.P. was late to all of her visits; S.P. admitted that she was
late to two visits.





[16]Subsection 161.001(1)(D)
provides grounds for terminating the rights of a parent who knowingly places or
knowingly allows a child to remain in conditions or surroundings that endanger
the physical or emotional well-being of the child.  Tex. Fam. Code Ann. ' 161.001(1)(D) (Vernon
2008).  Subsection 161.001(1)(E) provides
grounds to terminate the rights of a parent who engages in conduct or knowingly
places the child with persons who engage in conduct that endangers the physical
or emotional well-being of the child.  Id. ' 161.001(1)(E). 
Subsection 161.001(1)(M) applies to a parent who has had his or her
parent-child relationship terminated with respect to another child based on a
finding that the parent=s conduct was in
violation of paragraph (D) or (E).  Id.
' 161.001(1)(M).  The order terminating S.P.=s rights to D.R. (V.R.=s half-brother) was based
on findings under subsections 161.001(1)(D) and (E).





[17]The Department pled
subsection (M) in its original petition as a ground for termination of S.P.=s parental rights.





[18]The trial court, as the
finder of fact, was entitled to resolve the disputed theories regarding the
wrongfulness of S.P.=s opiate use, which S.P.
admitted may have been related to her misrepresentations to doctors.  See J.P.B., 180 S.W.3d at 573.





[19]M.R. has conceded on
appeal that he tested positive for cocaine in November 2007 and in April 2008;
the termination trial occurred in October 2008.





[20]M.R. apparently had some
difficulty finding classes in Spanish so that he could understand them.  He did not attend visits with V.R. regularly
because he works long hours supporting himself and S.P., who is unemployed.





[21]The Department expressed
its concern that even if M.R. had not used drugs in the several months
preceding trial, as he testified to, his failure to complete the drug-related
portions of his service plan reduced his ability to remain drug-free.  It also expressed its concern that M.R. never
intervened in S.P.=s drug use.





[22]A Department caseworker
testified that the foster family is Avery loving. 
It=s a very stimulating and
educational environment.  They treat
[V.R.] as one of their own.  The kids
have been very concerned about the trial going on.  They ask every day.  They love her very much.@  The caseworker also testified regarding V.R.=s bond to her brother
D.R., A[D.R.] will not let
[V.R.] out of his sight. . . .  They came
and picked up [V.R.] without his knowledge and . . . [h]e was very upset.  That is like his rock.  He is very, very attached to his sister.@